Chief Justice Robertson,
delivered the opinion of the court.
In 1814, Mclntire obtained a judgment in ejectment, for an undivided moiety of a large tract of land in Bourbon, against several persons who were in. possession, and defended the suit.
In August, 1821, James Hughes obtained a decree against Mclntire for a part of the land, and for $63 264 cents, for costs.
On the 29th of May, 1822, a fieri facias was issued against the estate of Mclntire, for the costs thus decreed against him in favor of Hughes; on which there was an endorsement that notes of the bank of Kentucky, or of the bank of the commonwealth would be received; and that the execution was for the benefit of Thomas W. Shephard. It was levied on the interest of Mclntire in the land, for which he had obtained the judgment in ejectment, supposed to be an undivided moiety of five hundred and fifty acres “after deducing the quantity decreed to Hughes, and this interest thus defined was sold by the sheriff, and was purchased by T. W. Shephard for the amount of the execution.
In 1828, a scicri facias was issued in the name of Mcln-tire,to revive thejudgmentin ejectment,and to have execution against the heirs and ierre tenants of one of the-defendants against whom the judgment had been rendered. Pending this writ, Mclntire appeared in court,, and having made affidavit that T. W. Shephard, and John Trimble, who were prosecuting the writ as attor-. ney’s at law in his name, had no authority from him- to appear as counsel in the case, and that he had other counsel, in whom alone he confided,moved the courtTor a rule on Shephard and Trimble, to show cause, why their *111 names should not be stricken from the record, and from the docket as his counsel.
The rule having been granted, Shephard and Trimble, showed as their only authority for prosecuting the writ, that Trimble was the counsel of Shephard, and that Shephard had purchased Mclntire’s interest in the land under execution, and had the sheriff’s deed therefor. They exhibited the decree for costs; the fieri facias which was issued to enforce it; the sheriff’s deed, and the judgment in ejectment in favor of Mclntire, and-insisted that these gave to Shephard the right to revive the judgment for his own benefit, in the name of Mclntire.
The circuit court ordered, that the names of Trimble and Shephard, be stricken from the docket as counsel for Mclntire; and that Shephard should not further prosecute or control the scire facias, either as counsel or as beneficial party.
To reverse this order, Shephard and Trimble have prosecuted this writ of error.
This court cannot decide now, whether the decree was such as would subject land to sale under the execution; nor whether any right which Shephard might have acquired by his purchase, is affected by any illegality or irregularity in the sale. The record does not show the date of the contract on which the decree was pronounced ; nor any facts which would enable us to determine whether the notice was legal and the sale regular, or whether, if they were not, Shepherd’s right is thereby affected.
But admitting that Shephard would have the right to prosecute the scire facias, if the sheriff’s deed vested in him a legal right to the land, nevertheless he cannot reverse the order of the circuit court, for two reasons:
1st. It was incumbent on him to show that he had acquired a legal right to the land, or all the right which was in Mclntire, at the date of the sale. This'he did not show. Mclntire was not in the actual possession of the land; and we cannot infer that he was in the legal or constructive possession of it, or in other words, that the persons in the actual possession were his tenants in deed or in contemplation of law.
If they held adversely to him before his judgment, there is nothing in the record which tends to show that *112 their tenure was not adverse to his right, when the sheriff attempted to sell that right to Shepherd, in June, 1822.
The court of ppcals will orfer madeby an inferior 1 court, refus-Aor Vtoact as counsel in a cause depending, or management of it under beneficial interest; unless ifest, and the record show a ticmofThe11" suit to the prejudice of mpiamtiffn
The judgment of eviction did not,per se, convert the occupancy of the defendants in the action, into a tenancy under Mclntire, nor did it change the character of their tenure; if it is was adverse before, it remained so after judgment. Mclntire might have entered after judgment; but he had an equal right to do so before judgment. The fact that he obtained-a judgment necessarily presupposes that he had a right" of entry. That he had not entered, and that he had not acquired the possession, in consequence of his judgment, is prove by the fact, that a scire facias, to revive the judgment was deemed necessary. If therefore, the possession was held adversely to him, before he obtained his judgment, we are not at liberty to infer that it was otherwise than adverse when the sheriff made the sale in 1822.
As it was incumbent on Shephard to show that the sheriff’s deed vested in him a valid legal title, it was of course, his duty to proved that the land was liable to s0^ ™der the execution. The sheriff cannot, when he sells land under execution, turn out the occupant and deliver possession to the purchaser. The sale, if legal §*ves to the purchaser “the legal possession;” but if the occupant refuse to surrender, the purchaser must obtain the actual possession by a legal eviction; see II Tidd’s Practice, 941-950, Bul. ni. pr. 104, II Saunders, 69, n. c. The People vs. Nelson, XIII Johnson, 344, I Vent. 41 Anon.
_ It is not now material to determine whether Mclntire is estopped bythe sale, to deny that he had title; he was est°PPe(l to deny that his right was subject to sale under the execution. The act which subjects land to sale under execution, only subjects to sale the legal “z‘nPossessi°n, reversion, or remainder;” and in the case of M’Connell vs. Brown, et al, V Monroe, 478, it was decided by this court, that the right of a debtor, to land in the adverse possession of another, is not subject to sale by execution; and that an execution sale of such right in action, vests in the purchaser no title. This decision is not more authoritative, than its doctrine is just and reasonable. It is conformable to the letter of the statute, and seems to us to be perfectly consistent with its object and spirit.
*113 A chose in action was not subject to execution'; áh equitable right was not liable to execution; land was not subject to sale by execution, in England, nor in Virginia, whence Kentucky derived the legal basis of her polity. In England, the land of a debtor coiild not even be extended by elegit, unless he was “seizedSee II Institutes, 395; Dalt. Sher. 134; II Sanders, 68, c.
Thus stood the law, when the legislature of this state deemed it expedient to subject land itself to the claims of execution creditors, if their debts could not be secured by the sale of the personal estate of their debtors.
The legislature never intended, that latid should be sold under a fieri facias, which could not h'áve been extended by elegit; or that a right in action to land should be liable to sale under execution, when a right .in action to personalty was exempt from such sale. The act subjecting land, is drawn with great care and ¡circumspection; and its whole tenor evinces the high estimation in which land was held. It had evér been, and must ever continue to be regarded with peculiar favor. It is essentially identified with the dominion of the stated
It is a chief ingrediént of its aggregaté wealth, be1 cause it is immoveable, and is comparatively indestructable: it is the dearest source of social prosperity, and political virtue: it is associated with the best and strongi est affections of its proprietor, and is most useful to his comfort and independence.
Can it be supposed then, that the legislature intended to subject land to exécuti'on, without any Of those restraints, which were considered salutary in controling sales of personal property, and “extent’s” under elegits ? The very subject itself, gives the answer, independently of the language of tire act of the legislature.
Real estate, when the title is unquestionable, will not sell for its value as generally, under execution, as personal property wills If the claim of a debtor to land; in the adve; se possession of another, could be sold under execution against his will, sacrifice would be the inevitable consequence. Besides, it is the policy of the law; to repress the spirit of speculating litigation. Hence; it will not permit a voluntary sale of land in the adverse possession of another, than the vendor. The statute subjecting land to execution, cannot be construed to *114 authorize a sale of land by fieri facias, which the owner himself, was not allowed to sell. At the date of the statute, a sale of land in the adverse possession of another, could pass no title to the vendee. Therefore, a sale of the same land by execution, would not vest any right in the purchaser.
The statute of wills, authorizes the devise of an “estate or interest in possession, reversion or remainder,” and this statute has been construed by this court, to sanction the devise of ap interest of the testator in land, adversely possessed by another. See May’s heirs, vs. Slaughter, III Marsh. 505. This construction of the statute of wills does not, in the slightest degree, tend to oppose the established interpretation of the act, subjecting land to execution. The phraseology of the two acts, is materially different; and their object and policy, are essentially variant. Every testator, should be permitted to devise, whatever proprietory interest, he may have, whether it be perfect or imperfect, legal or equitable; in possession or in action, And such, is the policy of the law.
Champarty does not infect last wills and testaments. Nor do any of the reasons, which have been suggested for the construction of the execution Jaw, apply in any degree, to utestaments.”
There is therefore, no discrepancy in the case of M’Connell vs. Brown, et al. and that of May’s heirs, vs. Slaughter.
Our conclusion is, that, if any of the defendants in the ejectment, were in possession of the land, holding "adversely to M’Intire, at the date of the sale, in 1822, the sheriff’s deed passed no right whatever to Shephard.
If M’Intire was in possession, or if others held it for his benefit fraudulently, it was necessary for Shephard, to show the fact. He could not prove title without showing it-; for otherwise, his purchase vested no right-in him. Not only did he fail to prove this important fact, but the record, according to a fair and reasonable Construction of it, proves the contrary. Wherefore, it results, that he failed to show any right to prosecute the scire facias, as counsel or party.
2d. The circuit court did not dismiss the scire facias. It seems that M’Intire was also prosecuting it by counsel, employed by himself. How he has pi’osecuted it, *115 or what has been the result, does not^appear. If he prosecuted it successfully, Shephard cannot have been injured, even if he were entitled to the land; for he would have as much right to the possession as he would have had, and might obtain it as easily as he could have done; if he had prosecuted the writ to judgment in M’Intire’s name.
Mills and Crittenden, for plaintiff; Monroe and, Hanson, for defendants,
If Shephard had shown a valid title, he has not shown that he has sustained any injury, in consequence of the order of the circuit court prohibiting interference in the prosecution of M’lntire’s writ; and we are not able to percieve how any judgment, which this court could give in this case, could benefit him.
The order of the court was interlocutory, so far as the merits of the proceeding are concerned. What judgment it rendered on the scire facias is unknown to the court. The merits of the scire facias, or the propriety of any judgment upon it, cannot now be revised or considered by this court; and whether one lawyer or another should prosecute, or whether one individual or another should be permitted to control the prosecu-. fion, is not a fit subject for adjudication by this court,, on a writ of error, unless the scire facias had been disposed of illegally and prejudicially to, th,e plaintiffs in error.
If the circuit court has erred in its order,, that error should not he revised by this court, until the scire facias had been dismissed, or otherwise disposed of. Perhaps, at the term succeeding’ that, at which the order was made, Shephard was allowed to control the scire facias, both as lawyer and beneficial party. Perhaps M’Intire obtained a judgment for execution, and is in possession. In either event a reversal of the order could not reinstate the plaintiffs, nor benefit them in any respect.
’Wherefore, we are of opinion, that the writ of er-. ror will not lie, and consequently it must he dismissed.